**Juana O. CASTILLO, Appellant,**

v.

**UNITED STATES FIRE INSURANCE COMPANY and Texas Workers' Compensation Commission, Intervenor, Appellees.**

**No. 08–95–00276–CV.**

Court of Appeals of Texas, El Paso.

Aug. 28, 1997.

**472**

Michael R. Wyatt, Texas Rural Legal Aid Inc., El Paso, for Appellant.

Harry Wade Deckard, Asst. Atty. Gen.–Tort Lit. Div., Austin, F. James Arkell, Hicks & Lucky, El Paso, for Appellees.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

**OPINION**

CHEW, Justice.

Juana O. Castillo appeals from the denial of her workers' compensation claim, complaining of the legal and factual sufficiency of the evidence and that the trial court erred in: not striking the Texas Workers' Compensation Commission intervention; in allowing in evidence related to the course and scope of employment; in denying her requested jury instruction; and in instructing the jurors that the commission appeals panel "decided that Juana O. Castillo was not an employee of Bruce Foods." We affirm the judgment.

Castillo was injured September 25, 1992, while working at Bruce Foods Company ("Bruce Foods"), a chile processing plant. She filed a notice of injury and claim for compensation with the Texas Workers' Compensation Commission, alleging she was injured in the course and scope of her employment with Bruce Foods. United States Fire Insurance Company which carries Bruce Foods' workers' compensation policy denied Castillo's claim on the basis that she was not an employee of Bruce Foods.

A commission hearing officer determined that Castillo was an employee of Diversified Management Resources Group, an employee leasing agency that had a contract with Bruce Foods. Although Diversified had an agreement with Bruce Foods to provide workers' compensation insurance, it failed to do so. Castillo pursued an administrative appeal of the hearing officer's determination and argued that Bruce Foods had borrowed her from Diversified. A commission appeals panel rejected that claim on the ground that there was no evidence presented to the hearing officer of any control by Bruce Foods of the details of Castillo's work. She brought this action to overturn the Commission's decision. The Attorney General intervened for the commission, seeking to uphold the panel's decision.

A jury found that Castillo was not a Bruce Foods' employee and the trial court entered judgment in favor of the defendant insurance company. Castillo filed a motion for a new trial, which was overruled by operation of law.

Castillo complains in her first two points of error that the trial court erred: (1) in entering judgment on the jury's verdict because her evidence showed as a matter of law that she was an employee of Bruce Foods; and (2) in failing to grant her a new trial because the jury's failure to find that she was a Bruce Foods' employee was against the great weight and preponderance of the evidence.

■■■ When a party on appeal attacks the legal sufficiency of the evidence on a matter where she had the burden of proof, she must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. In reviewing a matter-of-law challenge, we first examine the record for evidence supporting the finding, while ignoring all contrary evidence. If no evidence supports the finding, we then examine the whole record to see if the evidence establishes the contrary proposition as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

■■■ When a party on appeal attacks the factual sufficiency of a verdict on which she had the burden of proof, she must demon-strate the jury's failure to find is against the great weight and preponderance of the evidence. *Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied). In reviewing such a factual sufficiency challenge, we examine the whole record to determine if some evidence supports the finding, if the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if the great preponderance of the evidence supports its non-existence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■■■ Castillo argues that she was Bruce Foods' borrowed employee. If one employer places its general employees under the control of a second employer in the manner of performing their services, the employees become the second employer's special or borrowed employees. If the employees remain under the control of their general employer in the manner of performing their services, they remain the employees of the general employer. *Producers Chem. Co. v. McKay,* 366 S.W.2d 220, 225–26 (Tex.1963). To determine whether an employee remains a general employee or becomes a borrowed employee, the fact finder determines whose work the employee is performing. The fact finder determines this by ascertaining who has the power to control and direct the employees in performing their work. *Id.,* citing *Standard Oil Co. v. Anderson,* 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909).

■■■ When a contract between the employers expressly provides that one or the other shall have the right to control, that provision determines who is the employer. *Archem Co. v. Austin Industrial,* Inc., 804 S.W.2d 268, 269 (Tex.App.—Houston [1st Dist.] 1991, no writ)(Opin. on Reh'g); *Bucy-rus–Erie Co. v. Fogle Equip. Corp.,* 712 S.W.2d 202, 204 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). When the contract contains no such provision, the fact finder determines the right of control from the circumstances of the employment relationship. *McKay,* 366 S.W.2d at 226.

Examples of the type of control an employer normally exercises include when and

where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *Thompson v. Travelers Indem. Co. of Rhode Island,* 789 S.W.2d 277, 278–79 (Tex. 1990).

Castillo testified that she filled out a job application at Bruce Foods' plant in northeast El Paso. The factory had a sign identifying the company as Bruce Foods. She applied for a job with Irene Del Palacio, a Diversified employee, who never told her that she would be working for Diversified. There was no Diversified signage in the plant, before she was injured she had never heard of Diversified, and she had never intended to apply for a job with Diversified.

Castillo told the jury that she had worked for other temporary employment agencies before and that the other agencies helped her find other work when the seasonal work ended. No one at Diversified helped her find other work when the Bruce Foods work ended. She testified that her job was on the production line, peeling chiles and separating the red chiles from the green. Her line supervisor was Matilde "Lupe" or "Lupita" Padilla, who was in turn supervised by Bertha Holguin, and both were Diversified employees. She testified, however, that her work was actually controlled by Sergio Chavez, a Bruce Foods' employee. Chavez would instruct the line supervisor to make the line work faster and would tell her when the work was not going well. When Castillo was injured, it was Chavez who told her to go to the hospital. Castillo stated that she was injured on her lunch break at Bruce Foods when a forklift struck her. She reported her injury to Padilla, and Padilla helped take her to the nurse.

Castillo did admit that she completed an application form from Diversified, signed a Diversified job description for a cannery worker job, that Diversified employee Del Palacio hired her, and that her pay checks came from Diversified.

A co-worker, Maria Valdez, testified that Chavez, a Bruce Foods' employee, instructed the line supervisor how the workers should peel and sort chiles. The line supervisors then instructed the line workers.

Del Palacio testified that Diversified assumed responsibility for hiring all hourly employees at the plant. She testified that Harold Whitten, the general manager and a Bruce Foods' employee, would decide how many people should come to work from day to day, when to start up and shut down the production lines, how fast to run the conveyor belt, what days of the week the workers were to come in, what hours the people would work, when to call in fewer workers, and in which part of the processing plant each newly hired worker would work. He supervised production on the plant floor and had the power to hire and fire workers. As for Chavez's authority and control, Del Palacio testified that Chavez made suggestions to supervisors Padilla and Holguin, Diversified employees.

Del Palacio also disputed Castillo's testimony about her hiring, testifying that she explained to Castillo that Castillo would be working for Diversified and that she gave Castillo a Diversified employment manual. Del Palacio also testified that Diversified employees Holguin and Padilla controlled Castillo's work. She also testified that the contract between Diversified and Bruce Foods had been in effect for a year and that before the contract, the workers were Bruce Foods' employees, but that during the contract period the workers were Diversified employees. She did admit that although she was a Diversified employee, she had never met or spoken to a Diversified executive, and that her supervisor, Tom Kennedy, was a Bruce employee. She also testified that although the paychecks bore Diversified's logo, they were prepared at the Bruce Foods plant, drawn on an El Paso bank, in the same manner as before and after the contract operating period.

The commission appeals panel's written decision, submitted to the jurors as an exhibit, stated that Castillo returned to work a few days after the injury and continued working at Bruce Foods until the seasonal work was over. She then worked two other seasonal jobs until January 31, 1993, when she was

laid off and began collecting unemployment benefits. It recited that on October 12, 1993, a commission hearing officer determined that Diversified was Castillo's employer. The decision also noted that the hearing officer had determined that although Castillo had established disability for the period of February and March 1993, she presented no evidence as to the dates of her disability.

Castillo testified that Del Palacio did not explain to her she was to work for Diversified, rather than for Bruce Foods. Del Palacio disputed her assertion. Del Palacio did testify that Bruce Food employee Whitten controlled some aspects of the production. The parties disputed how much control Chavez, a Bruce Foods' employee, had over the details of production. Del Palacio said Diversified employees Padilla and Holguin controlled Castillo's work, while Castillo and Valdez testified that Chavez had control over her work. Castillo did sign an employment application from Diversified, but it is not clear how much English Castillo reads or speaks.

Castillo argues the case is controlled by *Pederson v. Apple Corrugated Packaging, Inc.*, 874 S.W.2d 135, 137 (Tex.App.—Eastland 1994, writ denied). There, the plaintiff-employee sought to sue Apple under common-law negligence. Apple countered by saying that because it was the plaintiff's employer, the workers' compensation system was the exclusive remedy. The plaintiff-employee said that because his checks came from Staff Benefits Inc., that Staff Benefits, and not Apple, was the worker's employee. Both side agreed that Apple controlled and directed the plaintiff-employee's work. The appellate court found that the party with the right of control at the time of injury was the employer under the Workers' Compensation Act. *Id.* at 137. Accordingly, the court found Apple was the plaintiff's employer and immune from a common law negligence suit. In this case, however, the parties specifically dispute control.

Castillo simply did not prove her case as a matter of law. As for the factual sufficiency, the parties contradict each other on certain points. The fact finder's duty is to sort out contradictions in the evidence and to weigh the witnesses' credibility. Rational jurors could have failed to find that Castillo was a Bruce Foods' employee, and though we might disagree with the jury's conclusion, we still cannot say that it was against the great weight and preponderance of the evidence. Accordingly, we must overrule Castillo's first and second points of error.

■■■ The state attorney general filed a plea in intervention on behalf of the commission pursuant to TEX.LAB.CODE ANN. § 410.254 (Vernon 1996). Castillo moved to strike on grounds that the commission had no standing because it had no justiciable interest. At the hearing on her motion, Castillo also complained that the commission had failed to follow the statute's requirements permitting intervention, namely that it had not been shown that the commission's executive director had initiated the intervention motion. The trial court denied the motion to strike and Castillo complains that was error in her third point of error.

■■■ Any party may intervene in a suit by filing a pleading, subject to the trial court's striking for sufficient cause on the motion of any party. TEX.R.CIV.P. 60. An appellate court reviews a trial court's ruling on a motion to strike a plea in intervention to determine whether the trial court abused its discretion. *Guaranty Federal Savings Bank v. Horseshoe Operating, Co.*, 793 S.W.2d 652, 657 (Tex.1990). The Labor Code specifically authorizes the commission to intervene in a judicial proceeding brought under the Workers' Compensation Act without the burden of showing it has a justiciable interest. Section 410.254 [1]; *ESIS, Inc., Servicing Contractor v. Johnson*, 908 S.W.2d 554, 563 (Tex.App.—Fort Worth 1995, writ denied).

The commission executive director has the power to initiate an action under Section 410.254 on behalf of the commission but also

---

1. Section 410.254 reads:
   On timely motion initiated by the executive director, the commission shall be permitted to intervene in any judicial proceeding under this

subchapter [Judicial Review—General Provisions] or Subchapter G [Judicial Review of Issues Regarding Compensability of Income or Death Benefits].

has the authority to delegate power and duties, TEX.LAB.CODE ANN. § 402.042b(10), (12)(Vernon 1996)[2]. The commission also may employ counsel to represent it in any legal action it initiates. TEX.LAB.CODE ANN. § 402.065. The attorney general's office at the motion hearing argued that the commission had requested the attorney general to intervene in as many compensation cases as possible. The commission on appeal argues that the attorney general has the authority to represent state interests, TEX. CONST. art. IV, § 22; TEX.GOV'T CODE ANN. §§ 402.001–402.045 (Vernon 1990 & Pamph.1997); *Brady v. Brooks*, 99 Tex. 366, 89 S.W. 1052 (1905), and that the law does not require the attorney general's office to prove that the head of a state agency filed or initiated a motion.

We have found no case law dealing with the issue of the executive director's filing or initiating a motion. But we cannot say that the trial court abused its discretion in allowing the commission's intervention. The Labor Code specifically allows for such intervention and we do not read it so narrowly as to require proof that the executive director initiated the motion. Consequently, we conclude that the trial court did not abuse its discretion and, therefore, the point of error is overruled.

Castillo next complains the trial court erred (1) in allowing in evidence related to the course and scope of employment, (2) in denying her requested jury instruction, and (3) in instructing the jurors that the commission appeals panel "decided that Juana O. Castillo was not an employee of Bruce Foods."

■ As to the evidentiary point, Castillo argues that the commission appeals panel

found that she had been injured in the course and scope of her employment and that Bruce Foods had never raised the defensive issue of course and scope in its pleadings and, hence, waived the issue. TEX.LAB.CODE ANN. § 410.302.[3] At trial, Castillo was questioned, over her relevance objection, about whether she was on her lunch break and whether anyone was controlling her at the time she was injured. The appellee contends that the question went not to the issue of course and scope, but rather to the issue of control; that is, whether Bruce Foods controlled Castillo to such an extent as to be her employer.

■ Relevant evidence has the tendency to make the existence of any fact consequential to the determination of the action more or less probable than it would be without the evidence. TEX.R.CIV.EVID. 401. All relevant evidence is admissible. TEX.R.CIV.EVID. 402. The decision to admit evidence is within the trial court's discretion. *Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263, 268 (Tex.App.—El Paso 1994, writ denied).

The issue of whether Castillo was on her lunch break was irrelevant to the extent that it dealt with the course and scope of her employment. The details of her lunch restrictions, however, were relevant on the question of control. If Bruce Foods dictated where and how she could eat lunch, that would support a finding that Bruce Foods was legally Castillo's employer.

Under the company's questioning, Castillo said she was not working when she was injured; that is, she was on her lunch break. No one told her what to do on her lunch break, that she could eat anywhere she wished, and that she was not paid during her lunch break.

2. Section 402.042 reads, in part:
   (a) The executive director shall conduct the day-to-day operations of the commission in accordance with policies established by the commission and otherwise implement commission policy.
   (b) The executive director may:

   (10) initiate an action under Section 410.254 to intervene in a judicial proceeding; [and]

   (12) delegate all powers and duties as necessary.

3. Section 410.302 reads:

   A trial under this subchapter is limited to issues decided by the commission appeals panel and on which judicial review is sought. The pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved.

Had Castillo been Bruce Foods' employee, the questions about her lunch break would be irrelevant. The questions as to where she ate lunch, what route she took, and whether she was paid would have gone to the course and scope issue. But because the critical issue is whether she was Bruce Foods' employee, the same questions have relevance to control. We find that the trial court did not abuse its discretion.

■ To remedy the damage Castillo says the improper questioning left, she asked the court to instruct the jurors that they were not to consider whether Castillo was acting in the course and scope of her employment. The court overruled Castillo's objection to the charge and rejected her requested instruction. Castillo complains this allowed the jurors to think that if she were on her lunch break, Bruce Foods, her putative employer, was not liable for her injury. Because we find the questioning was not improper, the court did not err in rejecting Castillo's instruction.

■ Castillo also asked for a jury instruction that said, "unless an employee leasing contract specifically establishes the right of control of the work of an employee, the employer-employee relationship may be established by evidence of actual exercise of control or right of control."

■ The trial court shall submit to the jurors such instructions and definitions as shall be proper to enable the jurors to render a verdict. TEX.R.CIV.P. 277. The trial court has considerable discretion in deciding what instructions are necessary and proper to submit to the jurors, *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 255–56 (Tex.1974), and an appellate court will review a charge complaint on an abuse-of-discretion standard, *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990).

Although the instruction is not an incorrect statement of the law, the trial court did not err in omitting the instruction. The court's

definition of borrowed employee tracked that given in 2 COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 19.04 (2nd ed.1989) and touched on the issue of control as the deciding question.

■ Castillo further complains that the trial court erred when it instructed the jurors that the commission panel in its decision decided that Castillo was not a Bruce Foods' employee.[4]

The commission panel found that the hearing officer had determined that Diversified hired Castillo, using Diversified's application form, Diversified paid her and that she had been told that she was a Diversified employee. The commission panel further stated that Castillo did not present hearing evidence about Bruce Foods' control of her or her work. The commission appeals panel concluded that it had no sound basis to disturb the hearing officer's fact-finding that Diversified was Castillo's employer. Castillo argued at trial and here that she was an employee of both Bruce Foods and of Diversified and that the trial court's instruction went beyond what the commission had found.

The commission panel said Castillo had failed to present evidence of Bruce Foods' control over her work and that the evidence before the hearing officer showed she was a Diversified employee. We conclude that implicit in the commission's findings is that Castillo was not a Bruce Foods' employee; the trial court's interpretation was not an unfair one. We thus cannot say the trial court abused its discretion in its interpretation of the commission panel's decision. We overrule Castillo's fourth, fifth, and sixth points of error.

Having considered and overruled all of Castillo's points of error, we affirm the judgment of the trial court.

---

4. The instruction reads:

You are instructed that the Texas Workers' Compensation Commission Appeals Panel, in its decision of January 13, 1994, decided that Juana O. Castillo was not an employee of Bruce Foods.

The code requires the trial court to inform the jurors of the commission appeals panel's decision. TEX.LAB.CODE ANN. § 410.304.