TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00349-CV






Del Industrial, Inc., Appellant



v.



Texas Workers' Compensation Insurance Fund, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 95-11777, HONORABLE HUME COFER, JUDGE PRESIDING 







 This is an action for collection of insurance premiums. The primary issue is whether a
company that leases employees from a staff leasing agency is responsible for paying workers' compensation
insurance premiums for the leased employees. The lower court imposed liability on appellant, Del
Industrial, Inc. ("Del"), for payment of the premiums based on section 91.042(c) of the Staff Leasing
Services Act ("the Act"). See Tex. Lab. Code Ann. § 91.042(c) (West 1996). (1) Because we find the
statute does not require the company to pay the premiums, we will reverse and render judgment in favor
of Del.



STATEMENT OF FACTS

 Appellee, the Texas Workers' Compensation Insurance Fund ("Fund"), is a governmental
corporation that operates as a workers' compensation insurance carrier. See Tex. Ins. Code Ann. art.
5.76-3 (West Supp. 1998). Pursuant to a contract, the Fund agreed to provide Del with workers'
compensation insurance coverage for Del's employees from March 30, 1994 to March 22, 1995. During
this time, Del also leased staff from a licensed staff leasing company, Administrative Resources, Ltd. (2) At
the end of the policy period, the Fund charged Del an additional $82,047, the cost of premiums for
workers' compensation coverage for the leased workers. (3)

 After unsuccessful attempts to collect these additional premiums, the Fund brought suit
against Del to collect the amount. The Fund moved for summary judgment on the issues of Del's liability
for the workers' compensation premiums and the amount due. The Fund claimed Del was liable for the
premiums under section 91.042(c) of the Act or, alternatively, because Del exercised supervision, direction,
and control of the leased employees. Del filed a competing motion for summary judgment, arguing that the
Fund had no legal basis for charging Del with the premiums. After a hearing, the trial court granted partial
summary judgment in favor of the Fund on the specific ground that Del was liable for the premiums under
the Act and denied Del's cross-motion for summary judgment in its entirety. The trial court's order was
silent as to the Fund's alternative theory of recovery. Further, the trial court did not render summary
judgment on the amount of premiums owed. Following a trial to determine the amount of premiums due,
the trial court rendered a final judgment which incorporated the language of the partial summary judgment
on Del's liability and awarded the Fund a total of $30,215.64 in premiums and interest. Del filed this
appeal, raising one issue. In its appeal, Del contends that the Act does not authorize the Fund to charge
Del workers' compensation insurance premiums for employees Del leased from a staff leasing company.


STANDARD OF REVIEW

 A summary judgment is proper only when a movant establishes that there is no genuine
issue of material fact and that it is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a. In
deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable
to the nonmovant will be taken as true. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546,
548-49 (Tex. 1985). Every reasonable inference must be indulged in the nonmovant's favor, with any
doubts resolved in its favor. Id. A summary judgment for the defendant disposing of the entire case is
proper if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. See Delgado v.
Burns, 656 S.W.2d 428, 429 (Tex. 1983).

 When both parties move for summary judgment, the non-prevailing party may appeal both
the prevailing party's motion as well as the denial of its own. See Holmes v. Morales, 924 S.W.2d 920,
922 (Tex. 1996); Tobin v. Garcia, 316 S.W.2d 396, 400 (Tex. 1958). An appellate court should
liberally construe appeals involving cross-motions for summary judgment, and, if the point of error
sufficiently alerts the court that appellant is contesting both the granting of appellee's motion and the denial
of its own, the court should consider both issues. See Runyan v. Mullins, 864 S.W.2d 785, 787-88 (Tex.
App.--Fort Worth 1993, writ denied). (4) In addition, when reviewing cross-motions for summary
judgement, the appellate court should consider all the summary judgment proof and determine all questions
presented. Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). The appellate court may
affirm the trial court's summary judgment or reverse and render judgment on the non-prevailing party's
motion. See Holmes, 924 S.W.2d at 922; Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988).

 This case is one of statutory construction, and such matters are questions of law for the
reviewing court to decide. See Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989). The
primary rule of statutory interpretation is that a court must look to the intent of the legislature and must
construe the statute so as to give effect to that intent. Union Bankers Ins. Co. v. Shelton, 889 S.W.2d
278, 280 (Tex. 1994). The court is bound to construe a statute as written and, if possible, ascertain the
legislature's intention from the language used in the statute. See Morrison v. Chan, 699 S.W.2d 205, 208
(Tex. 1985).


DISCUSSION

 The section of the Act in question reads as follows:


§ 91.042 Workers' Compensation Insurance


(a) A license holder may elect to obtain workers' compensation insurance coverage for
the license holder's assigned employees through an insurance company as defined under
Section 401.011(28) or through self-insurance as provided under Chapter 407.


(b) If a license holder maintains workers' compensation insurance, the license holder shall
pay workers' compensation insurance premiums based on the experience rating of the
client company for the first two years the client company has a contract with the license
holder and as further provided by rule by the Texas Department of Insurance.


(c) For workers' compensation insurance purposes, a license holder and the license
holder's client company shall be coemployers. If a license holder elects to obtain workers'
compensation insurance, the client company and the license holder are subject to Sections
406.034 and 408.001. (5)


(d) If a license holder does not elect to obtain workers' compensation insurance, both the
license holder and the client company are subject to Section 406.004 and 406.033. (6)


(e) After the expiration of the two-year period under Subsection (b), if the client company
obtains a new workers' compensation insurance policy in the company's own name or
adds the company's former assigned workers to an existing policy, the premium for the
workers' compensation insurance policy of the company shall be based on the lower of:


 (1) the experience modifier of the company before entering into the staff leasing
arrangement; or


 (2) the experience modifier of the license holder at the time the staff leasing
arrangement terminated.


(f) On request, the Texas Department of Insurance shall provide the necessary
computations to the prospective workers' compensation insurer of the client company to
comply with Subsection (e).



 The trial court based its decision regarding Del's liability for the premiums on its reading
of one sentence of this section. Quoting the partial summary judgment order, the final judgment states: 


The Court finds that, because of the language of Texas Labor Code §91.042(c) providing
that "For workers' compensation insurance purposes, a license holder [staff leasing
company] and the license holder's client company shall be coemployers," employees
leased by [Del] from a staff leasing company are covered under [Del's] workers'
compensation insurance policy issued by the Texas Workers' Compensation Insurance
Fund. Therefore, the Court finds as a matter of law the Texas Workers' Compensation
Insurance Fund is entitled to premium under its policy issued to [Del] for workers'[sic]
provided by a leasing company without statutory workers' compensation insurance
coverage.



Likewise, the Fund contends on appeal that the "coemployer" language obligates the client company to
extend coverage to leased employees when the staff leasing company does not elect to provide coverage. 
For numerous reasons, we disagree with the Fund's position.

 First, the Fund seeks to interpret the term "coemployers" without considering the entire
statutory scheme. Statutory provisions, however, must not be isolated from the surrounding language nor
construed apart from their context. See Morrison, 699 S.W.2d 208; Jessen Assocs., Inc. v. Bullock, 531
S.W.2d 593, 601 (Tex. 1975). Further, we must presume that in enacting the statute the legislature
intended the entire statute to be effective. See Tex. Gov't Code Ann. § 311.021(2) (West 1988). Reading
the entirety of the section on workers' compensation insurance together with other provisions of the Act
leads us to the conclusion that the staff leasing company and the client company are coemployers only to
the extent of the consequences of the staff leasing company's election.

 Based on the plain language of the statute, we conclude that the legislature granted the staff
leasing company the absolute right to elect whether to obtain coverage for the leased employees. Section
91.042(a) flatly states that "[a] license holder may elect to obtain workers' compensation insurance
coverage for the license holder's assigned employees." See Labor Code § 91.042(a) (West 1996). The
remainder of the workers' compensation insurance section then sets forth the consequences of the staff
leasing company's decision for both the staff leasing company and its client company, thus defining the
extent of their relationship as "coemployers." For example, if the staff leasing company elects to obtain
coverage, it pays the premiums, and the staff leasing company and the client company are subject to the
employee election, exclusive remedy, and exemplary damages provisions of the Texas Labor Code. See
Labor Code § 406.034 (West 1996) & § 408.001 (West 1996). If the staff leasing company does not
elect coverage, however, the staff leasing company and the client company must notify the Texas Workers'
Compensation Commission. See Labor Code § 406.004 (West 1996). In this event, the staff leasing
company and the client company, both having the status of coemployer, are subject to common law suits
without the benefit of certain defenses. See Labor Code § 406.033 (West 1996). The legislature's use
of the term "coemployers" followed only by an explicit explanation of the consequences of the staff leasing
company's election persuades us that the staff leasing company and client company are coemployers only
to the extent of the consequences of that election.

 Further, the legislature has imposed extensive responsibility for the leased employees on
the staff leasing company rather than the client company. For instance, the staff leasing company retains
the right of direction and control over the employees assigned to a client company. See Labor Code §
91.032(1) (West 1996). The staff leasing company also retains the right to hire, fire, discipline, and
reassign the assigned employees. See Labor Code § 91.032(4) (West 1996). Additionally, the staff leasing
company must assume responsibility for the payment of wages to the assigned employees, without regard
to payments made by the client company to the staff leasing company, and collect and pay payroll taxes
of the assigned employees. See Labor Code § 91.032(2), (3) (West 1996). It is the staff leasing
company's responsibility to inform its assigned employees of the contractual agreement with the client
company. See Labor Code § 91.031(b) (West 1996). Most important to our discussion, the staff leasing
company is statutorily required to retain the right of direction and control over the management of
workers' compensation claims, claim filings, and related procedures. See Labor Code § 91.032(5)
(emphasis added). This assignment of extensive responsibility to the staff leasing company additionally
persuades us that the coemployer status is limited solely to the consequences of the election. 

 Second, holding as the Fund urges us to do, that the client company must provide coverage
for the leased employees, could lead to an unreasonable result. Under the Fund's interpretation, an injured
leased worker could recover twice for the same injury: once from benefits obtained through the client
company's policy, and again under the Act in a common law cause of action brought against the staff
leasing company that elected not to provide coverage. (7) A court, however, will not construe a statute in a
manner that will lead to a foolish or absurd result when another alternative is available. See Tex. Gov't
Code Ann. § 311.021(3) (West 1988); Meno v. Kitchens, 873 S.W.2d 789, 792 (Tex. App.--Austin
1994, writ denied).

 Finally, accepting the Fund's interpretation would violate the legislative intent as expressed
in the plain meaning of the statute and require us to read an additional obligation into the statute that is
counter to this expressed intent. See Meno, 873 S.W.2d at 792 (courts are obligated to follow plain
meaning of statute); Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 659 (Tex.
1995) (courts should not insert additional requirements into statute except to give effect to clear legislative
intent). The Fund asks this Court to hold that the client company is obligated to provide coverage if the
staff leasing company elects against it. Clearly, though, section 91.042(d) demonstrates that the legislature
contemplated a situation in which neither the staff leasing company nor the client company would provide
coverage for the leased employees. Instead of requiring the client company under those facts to provide
coverage for the leased employees, the legislature chose to strip the client company of traditional common
law defenses and expose it to common law causes of action. We reject, therefore, the Fund's position as
contrary to the expressed legislative scheme and decline to impose the additional, unwritten obligation on
the client company.

 We hold that the Act does not require a client company to extend workers' compensation
insurance coverage to leased employees if the staff leasing company elects not to provide coverage. 
Accordingly, we further hold that Del is not liable to the Fund for workers' compensation premiums for the
employees it leased from Administrative Resources. Del's sole point of error is sustained. (8)

 Del requests that this Court reverse and render judgment in its favor. In a footnote to its
brief, the Fund argues that we are precluded from rendering judgment for Del because the trial court did
not consider the Fund's alternative ground for liability asserted in the summary judgment motion when it
granted the partial summary judgment on liability. However, we are obligated to dispose of as many claims
as possible while a case is on appeal in order to promote judicial economy. See Cincinnati Life Ins. Co.
v. Cates, 927 S.W.2d 623, 626 (Tex. 1996); Delta Air Lines, Inc. v. Norris, 949 S.W.2d 422, 429
(Tex. App.--Waco 1997, writ denied). (9) In Cates, the supreme court concluded that "the appellate court
may consider other grounds that the movant preserved for review and trial court did not rule on in the
interest of judicial economy." Cates, 927 S.W.2d at 626. We believe judicial economy would best be
served by reviewing the Fund's alternative theory of liability. (10)

 The Fund's alternative theory of liability presented in its motion for summary judgment
appears to be predicated on the traditional right-of-control test. The Fund argues the leased employees
were entitled to coverage under Del's policy because Del supervised, directed, and controlled the leased
employees. The employees, therefore, qualify as "persons engaged in work that could make [the Fund]
liable" under the policy, entitling the Fund to premiums from Del. In its cross-motion for summary judgment
and response to the Fund's motion, Del argues that the Act supersedes this common law test and defines
the relationship among staff leasing companies, client companies, and the leased workers for purposes of
workers' compensation insurance. Thus, any question of "control" of the employees is "irrelevant." In its
brief to this Court, the Fund admits that the Act supersedes the common law right-of-control test. 
Specifically, the Fund states "[t]he Legislature changed that test [right-of-control] as regards employee
leasing arrangements by legislating a statutory 'co-employer' status into the [Act]." We conclude that as
a matter of law the Fund cannot prevail on its right-of-control argument; therefore, it would be inefficient
to remand the case on this one issue to the trial court. Further, we are bound by the rules of appellate
procedure that require us to render the judgment the trial court should have rendered unless a remand is
necessary for further proceedings or the interest of justice requires a remand for another trial. See Tex. R.
App. P. 43.3. Neither exception applies.


CONCLUSION

 The Act sets forth a system in which the client company's obligations are determined by
the election of the staff leasing company. The staff leasing company and the client company are
coemployers only to the extent of the statutory consequences of this election. Accordingly, we reverse the
judgment of the trial court and render judgment that Del is not liable to the Fund for premiums on the leased
workers.



 

 Marilyn Aboussie, Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Reversed and Rendered

Filed: July 16, 1998

Publish
1. The statute in effect at the time was the Staff Leasing Services Act. Act of May 27, 1993, 74th Leg.
R.S., ch. 994, 1993 Tex. Gen. Laws 4346 (codified at Tex. Rev. Civ. Stat. Ann. art. 9104), repealed by
Act of May 11, 1995, 74th Leg., R.S., ch. 76, § 9.20(b), 1995 Tex. Gen. Laws 458, 645. This Act was
codified in 1995 as Chapter 91 of the Texas Labor Code. See Act of May 11, 1995, 74th Leg. R.S., ch.
76, § 9.20(a), 1995 Tex. Gen. Laws 458, 635. As the statutes are substantially similar, we will cite to the
current code for convenience.
2. Under the statute, Administrative Resources, Ltd. is both a "staff leasing services company" and a
"license holder," and Del is the "client company" of Administrative Resources, Ltd. The term "staff leasing
services company" means a business entity that offers staff leasing services. See Tex. Lab. Code Ann. §
91.001(15) (West Supp. 1998). A "license holder" is a person licensed under the chapter to provide staff
leasing services. See Labor Code § 91.001(11) (West Supp. 1998). "Staff leasing services" is defined
as an arrangement by which employees of a license holder are assigned to work at a client company and
in which employment responsibilities are in fact shared by the license holder and the client company, the
employee's assignment is intended to be of a long-term or continuing nature, rather than temporary or
seasonal in nature, and a majority of the work force at a client company worksite or a specialized group
within that work force consists of assigned employees of the license holder. See Labor Code § 91.001(14)
(West Supp. 1998). "Client company" means a person that contracts with a license holder and is assigned
employees by the license holder under the contract. See Labor Code § 91.001(3) (West Supp. 1998). 
3. Del offered summary judgment proof that none of the employees that it leased from Administrative
Resources actually filed any claims for workers' compensation against the Fund. 
4. We note also that the new Texas Rules of Appellate Procedure allow an appellant to present issues
or points for review, and the statement of an issue or point will be treated as covering every subsidiary
question that is fairly included. Tex. R. App. P. 38.1(e). 
5. Section 406.034 allows employees to waive coverage under workers' compensation insurance law
and to pursue common law causes of action. See Labor Code § 406.034 (West 1996). Section 408.001
states that recovery of workers' compensation benefits is the exclusive remedy of an employee covered
by workers' compensation insurance coverage; however, surviving spouses or heirs of a deceased
employee whose death was caused by an intentional act or omission of the employer or by the employer's
gross negligence may seek exemplary damages. See Labor Code § 408.001 (West 1996).
6. Under section 406.004, employers who do not obtain workers' compensation insurance coverage
are required to notify the commission and failure to comply constitutes an administrative violation. See
Labor Code § 406.004 (West 1996). Section 406.033 prevents employers who do not have workers'
compensation insurance from asserting traditional common law defenses and places the burden of proving
negligence of the employer on the injured worker. See Labor Code § 406.033 (West 1996).
7. In enacting the section on workers' compensation insurance, the legislature could have intended to
prevent the exact situation which the Fund's reading of the statute would cause. From our review of suits
involving workers' compensation claims filed prior to 1993, whether an injured leased worker could
recover from both the client company and the staff leasing company when only one provided workers'
compensation coverage was a frequently litigated question. See Williams v. Brown & Root, Inc., 947
S.W.2d 673 (Tex. App.--Texarkana 1997, no writ); Brown v. Aztec Rig Equip. Inc., 921 S.W.2d 835
(Tex. App.--Houston [14th Dist.] 1996, writ denied); Pederson v. Apple Corrugated Packaging, Inc.,
874 S.W.2d 135 (Tex. App.--Eastland 1994, writ denied); Rodriguez v. Martin Landscaping, 882
S.W.2d 602 (Tex. App.--Houston [1st Dist] 1994, no writ); Gibson v. Grocers Supply Co., 866
S.W.2d 757 (Tex. App.--Houston [14th Dist.] 1993, no writ); Cherry v. Chustz, 715 S.W.2d 742 (Tex.
App.--Dallas 1986, no writ). With the 1993 legislative definition of the relationship between the staff
leasing company and client company, however, it appears that the legislature attempted to put this issue
squarely to rest. By explaining that the staff leasing company and the client company are coemployers, the
legislature insures that both will be treated the same. 
8. Not only does our reading of the statute comport with, and preserve, the traditional workers'
compensation system in which the employer has the right to choose whether to obtain coverage for
employees, it also strikes a balance between the cost of business and protection of workers. By placing
the election to obtain workers' compensation insurance in the hands of the staff leasing company, smaller
and medium-sized businesses can acquire workers without providing benefits. At the same time, the
workers still can have workers' compensation insurance if the staff leasing company so elects. Since a
client company is exposed to common law negligence claims and loses certain benefits if the staff leasing
company does not elect to provide coverage, it seems more likely that the client companies would, overall,
choose to do business with staff leasing companies that provide coverage. Consequently, growth of
business would be encouraged without sacrificing the workers' benefits. 
9. In his concurrence to the plurality opinion in State Farm Fire & Casualty Co. v. S.S., Chief Justice
Phillips observed:

 

At times, the record will be sufficiently clear, and the need for an immediate final disposition
sufficiently strong, that an appellate court will best discharge its duty by reviewing all
summary judgment grounds raised and preserved by movant, regardless of the trial court's
action. More often, however, the administration of justice would probably best be served
by further trial court review.


858 S.W.2d 374, 382 (Tex. 1993) (Phillips, C.J., concurring).
10. Moreover, we do not believe that the Fund's failure to assert its alternative theory of liability in a
point of error on appeal should preclude us from reviewing the issue. Otherwise, movants would be able
to frustrate the judicial system by intentionally failing to bring all grounds advanced in a summary judgment
motion on appeal so that the appellate court would be forced to remand even futile issues to the trial court.



ee Labor Code § 406.034 (West 1996). Section 408.001
states that recovery of workers' compensation benefits is the exclusive remedy of an employee covered
by workers' compensation insurance coverage; however, surviving spouses or heirs of a deceased
employee whose death was caused by an intentional act or omission of the employer or by the employer's
gross negligence may seek exemplary damages. See Labor Code § 408.001 (West 1996).
6. Under section 406.004, employers who do not obtain workers' compensation insurance coverage
are required to notify the commission and failure to comply constitutes an administrative violation. See
Labor Code § 406.004 (West 1996). Section 406.033 prevents employers who do not have workers'
compensation insurance from asserting traditional common law defenses and places the burden of proving
negligence of the employer on the injured worker. See Labor Code § 406.033 (West 1996).
7. In enacting the section on workers' compensation insurance, the legislature could have intended to
prevent the exact situation which the Fund's reading of the statute would cause. From our review of suits
involving workers' compensation claims filed prior to 1993, whether an injured leased worker could
recover from both the client company and the staff leasing company when only one provided workers'
compensation coverage was a frequently litigated question. See Williams v. Brown & Root, Inc., 947
S.W.2d 673 (Tex. App.--Texarkana 1997, no writ); Brown v. Aztec Rig Equip. Inc., 921 S.W.2d 835
(Tex. App.--Houston [14th Dist.] 1996, writ denied); Pederson v. Apple Corrugated Packaging, Inc.,
874 S.W.2d 135 (Tex. App.--Eastland 1994, writ denied); Rodriguez v. Martin Landscaping, 882
S.W.2d 602 (Tex. App.--Houston [1st Dist] 1994, no writ); Gibson v. Grocers Supply Co., 866
S.W.2d 757 (Tex. App.--Houston [14th Dist.] 1993, no writ); Cherry v. Chustz, 715 S.W.2d 742 (Tex.
App.--Dallas 1986, no writ). With the 1993 legislative definition of the relationship between the staff
leasing company and client company, however, it appears that the legislature attempted to put this issue
squarely to rest. By explaining that the staff leasing company and the client company are coemployers, the
legislature insures that both will be treated the same. 
8. Not only does our reading of the statute comport with, and preserve, the traditional workers'
compensation system in which the employer has the right to choose whether to obtain coverage for
employees, it also strikes a balance between the cost of business and protection of workers. By placing
the election to obtain workers' compensation insurance in the hands of the staff leasing company, smaller
and medium-sized businesses can acquire workers without providing benefits. At the same time, the
workers still can have workers' compensation insurance if the staff leasing company so elects. Since a
client company is exposed to common law negligence claims and loses certain benefits if the staff leasing
company does not elect to provide coverage, it seems more likely that the client companies would, overall,
choose to do business with staff leasing companies that provide coverage. Consequently, growth of
business would be encouraged without sacrificing the workers' benefits. 
9. In his concurrence to the plurality opinion in State Farm Fire & Casualty Co. v. S.S., Chief Justice
Phillips observed: